# EXHIBIT D



# American Arbitration Association
## EMPLOYMENT ARBITRATION TRIBUNAL
### Case No: 32-160-00496-13

AYUB ABDUL-HAQQ,
    Claimant/Counter-Respondent,

v.

ARISE VIRTUAL SOLUTIONS, INC.,
    Respondent/Counter-Claimant.

AND

ARISE VIRTUAL SOLUTIONS, INC.
    Cross-Claimant,

v.

A & A VIRTUAL SOLUTIONS,
    Cross-Claim Respondent.

---

## INTERIM AWARD

---

Before Arbitrator:

Karen Evans, Esquire
Litigation Resolution, Inc.
Suite 1229
169 East Flagler Street
Miami, Florida 33131

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the dispute resolution provision contained within the March 7, 2012 Master Services Agreement, with similar language contained in the January 16, 2103 and February 15, 2013 Statements of Work, all of which are the subject of

the claim, counterclaim and cross-claim herein and which have been consented to and entered into between A & A Virtual Solutions (and executed by its President Ayub Abdul-Haqq) and Arise Virtual Solutions, Inc.; having been duly sworn; having heard and considered the live testimony of Ayub Abdul-Haqq, Ayman Latif, Joseph Otis, Robert Padron and James Clinton and a video-deposition excerpt of Ayub Abdul-Haqq; having further considered the exhibits introduced during the Final Hearing January 19 and 20, 2015 and having considered each party's Post-Hearing Brief together with the legal authorities submitted with both the pre-hearing and post hearing briefs; in accordance with the Employment Rules of the American Arbitration Association[1], hereby, FIND and enter the following INTERIM AWARD:

## THE BACKGROUND AND THE PARTIES' ALLEGATIONS

The Claimant's Demand for Arbitration, together with the exhibits thereto which include the First Amended Class Action Complaint previously filed in the United States District Court for the Southern District of Florida, seeks damages for an alleged misclassification of Mr. Ayub Abdul-Haqq (hereinafter "Abdul-Haqq" or "Claimant") as an independent contractor and not as an employee. The Demand and the First Amended Class Action Complaint sought damages pursuant to the Fair Labor Standards Act, the Florida Minimum Wage Act and the Florida Constitution. At the Final Hearing and in the Claimant's Post-Hearing Brief, the arguments solely addressed the Fair Labor Standards Act. Accordingly, as to the Claimant's request for relief, the facts and law analyzed herein will be confined to the Fair Labor Standards Act. The Claimant seeks

---

[1] Claimant, who alleges he was an employee misclassified as an independent contractor, filed his Demand for Arbitration pursuant to the AAA Employment Arbitration Rules. Respondent, which alleges Claimant was an independent contractor acting through his independent business organization, filed its Demand for Arbitration pursuant to the AAA Commercial Arbitration Rules. Pursuant to the Parties' agreement as announced at the February 26, 2014 Preliminary Hearing and confirmed in the Report of Preliminary Hearing and Scheduling Order, the Employment Arbitration Rules and Mediation Procedures as amended and effective June 1, 2009 apply to this arbitration. Said agreement was made without a waiver of Respondent's position and defenses in this matter and without prejudice to Respondent's position in other arbitrations.

Case 0:13-cv-62325-WPD Document 58-26 Entered on FLSD Docket 05/04/2015 Page 4 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 4 of 17

Case No. 32-160-00496-13

minimum wages of $5,191.00 for time spent in training and certification and seeks $1,335.00 in reimbursement for money spent on home office equipment and two training courses. Claimant requests an award of the two amounts totaled and liquidated for an interim award of $13,052.00, to be followed by an award of reasonable attorney's fees and costs.

Arise Virtual Solutions, Inc.'s (hereinafter "Arise" or "Respondent") Answer includes twenty-one affirmative defenses, a counterclaim and a cross-claim against A & A Virtual Solutions (hereinafter "A & A") which is the corporate entity through which Claimant provided services to Respondent. The two count counterclaim is for Unjust Enrichment and Declaratory Judgment. The claim for Unjust Enrichment alleges that Abdul-Haqq would be unjustly enriched if he were to keep the money paid to his corporation (when both parties operated under the premise that Abdul-Haqq was an independent contractor) and also, pursuant to this Arbitration, be awarded money as a misclassified employee. Arise seeks "the relief of restitution, disgorgement, interest, reasonable attorney's fees and costs of suit." Pursuant to the Declaratory Judgment count, Arise seeks a declaration that Claimant, or A & A, materially breached the parties' Master Services Agreement (hereinafter "MSA"), that Arise may properly and without liability terminate the MSA, all Statements of Work (hereinafter "SOWs"), and all schedules, appendices, and exhibits attached thereto, and that such termination will not be retaliatory. The Cross-Claim also contains two counts; one for Indemnification and one for Declaratory Judgment. Indemnification is sought pursuant to a paragraph within the various Arise and A & A contracts which provide for indemnification in case of breach of contract. The Declaratory Judgment count mirrors that in the Counterclaim. The Affirmative Defenses are 1) Failure to State a Cause of Action, 2) Failure to State a Cause of Action for Damages, 3) No Collective/Class Representative Action, 4) Accord and Satisfaction; Payment, 5) Release, 6) Unclean Hands/In Pari Delicto, 7) Knowing Submission/Consent, 8) Failure to Join an Indispensible Party, 9)

3

Case 0:18-cv-62623-WPD Document 58-26 Entered on FLSD Docket 05/04/2015 Page 4 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 5 of 17

Case No. 32-160-00496-13

IB's Independent Contractor Status, 10) No Respondeat Superior Liability, 11) Not Joint Employer, 12) Breach of Contract, 13) Conduct Reasonable and in Good Faith/Not Willful, 14) Waiver, Discharge and Abandonment, 15) Estoppel, 16) Setoff and Recoupment, 17) Collateral Estoppel, 18) No Punitive or Liquidated Damages, 19) Adequate Remedy at Law, 20) Attorneys' Fees, and 21) Operative Arbitration Rules.

An Answer, with fourteen affirmative defenses, was filed in response to the Counterclaim and Cross-Claim. The affirmative defenses are 1) failure to allege facts sufficient to state a cause of action, 2) violation of the anti-retaliation provision of the FLSA, 3) estoppel, 4) waiver, 5) laches, 6) unclean hands, 7) unjust enrichment, 8) allegations not expressly admitted are denied, 9) Agreement void as against public policy, 10) unconscionable and unenforceable, 11) Agreement does not provide for the relief requested, 12) declaratory, injunctive and/or other equitable relief barred due to adequate remedies at law and no damages, 13) no damages caused by Claimant, and 14) Claimant's actions did not violate the Agreement.

## DEMAND PURSUANT TO FAIR LABOR STANDARDS ACT

Arise argues that both the contract language and the Claimant's testimony as to employment status are important factors in Respondent's favor.

The Parties' initial contract (the MSA) which governed all further dealings starts with the stated premise that the signatories "desire to create an independent contractor relationship with one another." Additionally, after the definition paragraphs, the entire first section of the MSA is entitled "Independent Contractor Relationship" and contains ten separately numbered paragraphs detailing the parties' intent and actions designed to accomplish their goal of an independent contractor relationship. Exhibit A to said MSA is a waiver required to be signed by every ACP (later known as CSP) stating that, *inter alia*, the signatory is not an employee of Arise and not entitled to benefits from Arise.

4

Similarly, the SOWs executed for each individual assignment contained a multi-paragraph section of representations and warranties to support independent contractor status.

Mr. Abdul-Haqq's own testimony during the Final Hearing, both at page 155, lines 11 – 14 and at page 571, lines 2 – 4 and line 11, was that he was not an employee of Arise, and he never claimed to be an employee of Arise.

These facts do not, however, determine the outcome of the question at hand. As to both the MSA and SOW contract language and Mr. Abdul-Haqq's testimony, one can look to the language of a case cited by both Claimant and Respondent. The appellate court in *Usery v. Pilgrim Equipment Company, Inc., et al.* 527 F.2d 1308 (5th Cir. 1976)[2] stated, with regard to laundry operators working pursuant to lease agreements with independent contractor references,

> We reject both the declaration in the lease agreement that the operators are "independent contractors" and the uncontradicted testimony that the operators believed that they were, in fact, in business for themselves as controlling FLSA employee status. Neither contractual recitations [footnote citations omitted] nor subjective intent [footnote citations omitted] can mandate the outcome in these cases. Broader economic realities are determinative.

Similarly, in the *Ferreira v. Network Express, Inc.*, 2007 WL 8097539 (M.D. Fla.) case cited by Respondent, the following quote taken from *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) appears:

> The labels given to the arrangement by the parties involved are not determinative, and "employee status" has been held to be unwaivable. *See, e.g., id.* at 729.

Arise additionally argues that the fact that Mr. Abdul-Haqq created his own independent business entity which employed him and six other individuals (whom he hired to likewise work for Arise clients) is indicative of his not being

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals, 11th Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

5

Case 0:18-cv-62623-WPD Document 58-26 Entered on FLSD Docket 05/04/2015 Page 16 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 7 of 17

Case No: 32-160-00496-13

an employee of Arise. The cases submitted by the parties, however, do not support such a finding. *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975) did not involve an individual who had his own business entity; however he did hire and fire his own employees. Mr. Mednick received money from both the alleged employer and compensation from third parties. In reversing a trial court finding of independent contractor status, Judge Godbold wrote:

> There are factors which arguably suggest that Mednick was an independent contractor. He hired and fired his own employees. But the courts have had little difficulty in finding employment status though the employee could hire others within his own discretion. *Rutherford*, supra, *Twyeffort*, supra, *Mitchell v. Strickland Transportation Co.*, 228 F.2d 124 (CA5, 1995).
>
> * * *
>
> The Supreme Court has also held that even relationships deriving from corporate identities properly established under state law will not be controlling for ascertaining whether the relationship is also one of employment, *vel non*, for the purposes of the FLSA. *Goldberg v. Whitaker House Coop. supra.*

*Padjuran v. Aventura Limousine & Transportation Service, Inc.*, 500 F.Supp.2d 1359 (So.Dist.Fla., 2007) involved a chauffeur seeking unpaid wages and overtime pursuant to the FLSA. Defendant sought to dismiss the claim, in part, because it did not do business with Mr. Padjuran directly, but through Elite Group of Miami, Inc., an entity of which Mr. Padjuran was the president and sole shareholder. Judge Huck denied the motion to dismiss as he was obligated to accept the material allegations as true. Judge Huck, went on to state in his opinion, however,

> "Moreover, the fact that the parties here may have entered into a relationship which appeared on paper to be that between a business and an independent contractor is not dispositive of the issue of whether Plaintiff was, in reality, an employee as opposed to an independent contractor for FLSA purposes. *See, e.g., Harrell v.*

6

Case 0:13-cv-62523-WJZ Document 58-26 Entered on FLSD Docket 05/04/2015 Page 15 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 8 of 17

Case No: 32-160-00496-13

*Diamond A Entertainment*, 992 F.Supp. 1343, 1347-48 (M.D.Fla. 1997). Employment is defined with "striking breath"[3] under the FLSA. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 328, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). An entity is said to "employ" a person if it "suffers or permits" the person to work. 29 U.S.C. §203(g). In this regard, "courts must determine whether, as a matter of "economic reality," an individual is an employee or an independent contractor. [citations omitted] To that end, courts look not to the common law definition of employment, but rather to whether the putative employee is economically dependent upon the alleged employer.

The evidence was clear that Arise never engaged or contracted directly with any individual, only with corporate entities. Nonetheless, Arise's transparency in its business model and Mr. Abdul-Haqq's working through A & A do not dictate the conclusion that Mr. Abdul-Haqq was an independent contractor.

The question of whether Ayub Abdul-Haqq, or anyone, was an employee or an independent contractor is a function of the economic reality test which includes consideration of six different factors. Applying the specific facts of any one person's experience to the six factors is not, however, the sole measure. As stated in *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013):

> Courts have applied various multifactor tests to guide the "economic reality" inquiry. Both parties in the instant appeal rely on the following six factors which many courts have used as guides in applying the economic reality test:
> (1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) The alleged employee's opportunity for profit or loss depending on his managerial skill;
> (3) The alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) Whether the service rendered requires a special skill;
> (5) The degree of permanency and duration of the working relationship;

---

[3] Although the spelling is as quoted above, the Undersigned assumes that it's a case of "darn that auto-correct!" and the actual quote is intended to be "striking breadth."

7

Case No: 32-160-00496-13

(6) The extent to which the service rendered is an integral part of the alleged employer's business.

While these factors serve as guides, the overarching focus of the inquiry is economic dependence:

> No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor – economic dependence. The…tests are aids – tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is *dependence* that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

*Usery*, 527 F.2d at 1311-12 (emphasis in original) (citations omitted). Ultimately, in considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." *Mednick v Albert Enterprises, Inc.*, 508 F.2d 297, 301-02 (5th Cir. 1975).

With the above in mind, this Arbitrator has undertaken a review of the evidence introduced during the Final Hearing.

1) Degree of Arise's Control

Arise has argued that it had no control as to who Claimant chose to hire, no control as to which customers A & A's seven workers chose to service while working under A & A, and no control or input into how each of the seven A & A workers were paid. While Arise did not control who Claimant chose to hire, those hired had to first complete a profile on Arise's website, pass a voice assessment, a background check and pass an initial online class known as CSP101, all of which were administered by Arise. Mr. Abdul-Haqq worked with two different Arise clients. The vast majority of his two and one-half year experience was working with AT&T; he spent approximately two months

Case 1:18-cv-62263-KMM Document 58-26 Entered on FLSD Docket 05/04/2015 Page 54 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 10 of 17
Case No. 32-160-00496-13

working with Intuit. The training materials used for the AT&T certification were AT&T's materials, not Arise authored documents. The calls made by Mr. Abdul-Haqq were all recorded as AT&T required that 100% of their calls be recorded. Although there were multiple layers of people reviewing metrics and Mr. Abdul-Haqq's performance, the people reviewing him were frequently subject to their own independent contractor agreements with Arise. Mr. James Clinton, however, was an Arise employee. In his pre-hearing deposition, and when reminded during Final Hearing, Mr. Clinton testified that one of his "job requirements is to ensure that the CSPs meet these metrics." *See transcript, page 480, lines 4 – 12.* As a Senior Performance Compliance Lead (and previously as a Performance Compliance Lead) he supported Quality Assurance Performance Facilitators (hereinafter "QAPFs") reviewing metrics and advising individuals like Claimant when they fell short of expectations. Mr. Clinton testified to QAPFs listening in on two calls per week for each of the various CSPs under their wing. Mr. Clinton testified to providing templates to Mr. Abdul-Haqq for introductory correspondence for CSPs and being so involved as reviewing and approving said introductory correspondence for grammatical errors prior to its issuance. *See Claimant's Exhibit 9 AriseAH 673 – 676, 671 - 672.* Mr. Clinton testified to sometimes communicating directly with PFs and sometimes communicating with the IBOs instead. Mr. Clinton testified to hosting huddles to assist the QAPFs and provided detailed documentation related to same. *See Claimant's Exhibit 9 AriseAH 664 – 668.* Mr. Clinton exchanged correspondence directly with Mr. Abdul-Haqq about payment problems when invoices were short. *See Claimant's Exhibit 9 AriseAH 677 and 678.* Claimant's Exhibit 9 contains a host of additional documents between Arise Senior Performance Compliance Lead James Clinton and Claimant, Abdul-Haqq. This factor weighs in favor of employee status.

    2) Opportunity for Profit or Loss Depending on Managerial Skill

9

Case 0:18-cv-62623-WPD Document 58-26 Entered on FLSD Docket 05/04/2019 Page 11 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 11 of 17

Case No. 32-160-00496-13

Claimant has argued that he had little opportunity for profit or loss and that his income was earned acting as a CSP, not managing the others working through A & A. According to his testimony, the only money Claimant received for his own benefit from the six working through A & A was reimbursement for money he advanced. No evidence was introduced that Claimant profited from A & A having employees. On the other hand, Claimant's Counsel's question of Robert Padron and his answer thereto (transcript page 410, lines 13 - 19) reflect that workers do have the ability to increase their income based upon their ability to manage their metrics.

> Q. *** In other words the CSPs who have the highest metrics, get the first pick of hours and they also get the calls routed to them first, so they're more likely to get minutes on the phone with customers in order to get paid?
> A. Top performing independent businesses do have the ability to maximize their revenue potential.

While it seems that the Claimant did not take advantage of the ability to consistently maximize his income, or coach the other people working under his banner to consistently maximize their income in return for a percentage to himself, it does appear that there is an opportunity to profit from the use of managerial skill. This factor weighs in favor of independent contractor status.

3) Investment in Equipment or Materials, or Employment of Workers

Mr. Abdul-Haqq testified to spending approximately $1000.00 on home office equipment and an additional $335.00 on two certification classes. The amount was so significant to Mr. Abdul-Haqq that he needed Mr. Latif's assistance in paying for the training and certification. Nonetheless, Mr. Abdul-Haqq's investment pales in comparison to Arise's investment in its telephony platform. This suggests employee status. Further, the evidence reflects that Mr. Abdul-Haqq's employment of six additional people through A & A was not for personal

Case 0:18-cv-62833-WPD Document 58-26 Entered on FLSD Docket 12/05/2018 Page 56 of 61
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 12 of 17

Case No: 32-160-00496-13

profit but simply as a pass-through for the six to earn income from servicing Arise clients. This fact similarly weighs in favor of employee status.

4) Special Skill

As stated in *Yilmaz v. Mann*, 2014 WL 1018006 (S.D.Fla.), "an independent contractor prepossesses a special skill, while an employee learns one on the job." The evidence at Final Hearing was that Mr. Abdul-Haqq brought no special skills to the table when he began working with Arise. He, like all CSPs, first took CSP101, and then the various client specific certifications in order to work with Arise's clients. This factor weighs in favor of employee status.

5) Degree of Permanency or Duration

Despite the multiple, short-duration SOWs executed between the parties, Mr. Abdul-Haqq worked with Arise's clients for two and one-half years. Further, almost all of this time was spent working under AT&T SOWs. These factors suggest employee status.

6) Extent to Which Service Rendered is Integral Part of Business

Mr. Abdul-Haqq's customer service work for Arise's clients is an integral part of Arise's business. This factor weighs in favor of employee status.

As explained above, the broader economic realities point to employee status, not independent contractor status as between Mr. Abdul-Haqq and Arise. When one then considers the question of "economic dependence," the scale fully tips in favor of employee status. Mr. Abdul-Haqq used the CSP, AT&T and Intuit training and certification he obtained in order to earn his income. He could not have done that without Arise telephony platform. There is no evidence that he could actually use those trainings to obtain other clients for himself. As stated in *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299 (5th Cir. 1975)

11

Case 0:18-cv-62623-WPD Document 58-26 Entered on FLSD Docket 05/04/2015 Page 12 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/22/16 Page 13 of 17 PageID #: 572
Case No. 32-160-00496-13

> The ultimate criteria are to be found in the purposes of the act. * * * The statutory coverage is not limited to those (whose work activities satisfy the common law "control" test) but rather to those who, as a matter of economic reality, are dependent upon the business to which they render service.

The evidence clearly reflected that Mr. Abdul-Haqq's / A & A's ability to obtain clients was solely through Arise.

## RESPONDENT'S AFFIRMATIVE DEFENSES

Either for the reasons set forth above, or because no evidence was presented at the Final Hearing to support same, or the defense was mooted between filing and the Final Hearing, the Respondent has failed to prove its affirmative defenses numbered and named as follows: 1) Failure to State a Cause of Action, 2) Failure to State a Cause of Action for Damages, 3) No Collective/Class/Representative Action, 4) Accord and Satisfaction; Payment, 5) Release, 6) Unclean Hands/In Pari Delicto, 7) Knowing Submission/Consent, 8) Failure to Join an Indispensible Party, 9) IB's Independent Contractor Status, 10) No Respondeat Superior Liability, 11) Not Joint Employer, 12) Breach of Contract, 13) Conduct Reasonable And In Good Faith/Not Willful, 14) Waiver, Discharge and Abandonment, 15) Estoppel, 16) Setoff and Recoupment, 17) Collateral Estoppel, 18) No Punitive or Liquidated Damages, 19) Adequate Remedy at Law, 20) Attorneys' Fees, and 21) Operative Arbitration Rules.

## RESPONDENT'S COUNTERCLAIM FOR UNJUST ENRICHMENT

Respondent alleges that it:

> "reasonably, in good faith, and to its own detriment relied upon the representations and promises that Claimant would provide services as an employee of A & A, and there would be no employment relationship between Arise and Claimant. Arise so relied in structuring its business relationships, in forming and executing its business plan, in planning for, preparing, and paying its taxes, and in making withholdings and otherwise. Claimant knowingly and purposefully induced Arise to rely upon A & A's promises in this

12

Case 0:18-cv-62823-WPD Document 58-26 Entered on FLSD Docket 11/05/2018 Page 14 of 16
Case 4:21-cv-00538-RK   Document 2-4   Filed 07/22/21   Page 14 of 17   PageID #: 583

Case No. 32-160-00496-13

regard (made by Claimant as A & A's agent and "President"), with the intention that Arise so rely."

The evidence presented at Final Hearing reflects that in fact, Arise required Claimant to work through an independent business organization. As evidenced through both testimony at the Final Hearing and repeated in Arise's post-hearing brief,

> "From the moment an individual chooses to access Arise's website to pursue an Arise project, the business-to-business nature of the relationship is made exceedingly clear. (Tr.533:3-14) To the extent individuals want to provide call center services to large companies by way of leveraging Arise's infrastructure, individuals have the option of *either* (i) working for an existing third-party vendor in the Arise network, or (ii) running one's own third-party vendor and contracting with Arise to provide such services. (Tr. 426:25-427:6.)

The evidence makes clear that it wasn't Arise relying on promises offered by either Mr. Abdul-Haqq or A & A; the fact is that Arise dictated the terms of the parties' relationship, both in the written contracts and the manner in which they operated with each other. Certainly Mr. Abdul-Haqq was an adult who knowingly and intentionally agreed and executed the contracts. Arise was not, however, an innocent party being led down the garden path. Arise's insistence on execution of its own business model precludes it from now seeking the equitable remedy of an unjust enrichment claim.

Accordingly, Respondent has not proven its Counterclaim for Unjust Enrichment.

**RESPONDENT'S COUNTERCLAIM FOR DECLARATORY JUDGMENT**

Respondent has not proven its Counterclaim for Declaratory Judgment.

**RESPONDENT'S CROSS-CLAIM FOR INDEMNIFICATION**

Respondent's claim for indemnification alleges that:

13

Case 0:18-cv-62623-WPD Document 58-26 Entered on FLSD Docket 05/04/2015 Page 14 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 15 of 17

Case No: 32-160-00496-13

> "Claimant caused A & A to breach its contract with Arise, to which Arise which is an intended third-party beneficiary, by claiming retroactively that he was an employee of Arise. A & A also breached its agreements and representations to Arise."

As reflected above in the *Ferreira v. Network Express, Inc.*, 2007 WL 8097539 (M.D. Fla.) case cited by Respondent, the following quote taken from *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) appears:

> The labels given to the arrangement by the parties involved are not determinative, and "employee status" has been held to be unwaivable. *See, e.g., id.* at 729.

As Respondent points out at the commencement of its Post-Hearing Brief, Claimant testified that he did not believe himself an employee of Arise and never claimed to be an employee of Arise. As cited above however, employee status is unwaivable. Legal recognition of same through this arbitration is not equal to a breach of contract. Therefore, Respondent cannot seek indemnification on the basis that Claimant breached the contract. Accordingly, Respondent has not proven its Cross-Claim for Indemnification.

## RESPONDENT'S CROSS-CLAIM FOR DECLARATORY JUDGMENT

Respondent alleges that A & A has materially breached the MSA. For the reasons set forth above, the Undersigned does not equate a finding that Mr. Abdul-Haqq was an employee of Arise with a breach of contract. I do not find that A & A has materially breached the MSA. Accordingly, the Respondent has not proven its Cross-Claim for Declaratory Judgment.

## AFFIRMATIVE DEFENSES TO THE COUNTERCLAIM AND CROSS-CLAIM

As Respondent has not prevailed upon its Counterclaim or Cross-Claim, the affirmative defenses to same need not be addressed.

14

Case 0:18-cv-62823-WPD Document 58-26 Entered on FLSD Docket 16/05/04/2015 Page 16 of 16
Case 4:21-cv-00538-RK Document 2-4 Filed 07/28/21 Page 16 of 17

Case No: 32-160-00496-13

## DAMAGES

I find that Mr. Abdul-Haqq was an employee of Arise from the time he completed the Arise online profile, passed the Arise voice assessment and the Arise background check. No evidence was introduced that the training and certification which Mr. Abdul-Haqq took over a few months time was similar to that which would be given in vocational school. Without the training and certification, Mr. Abdul-Haqq could not do the work for Arise's clients. Therefore, the training did benefit Respondent. Similarly, without the $1000.00 of equipment, Claimant could not do the work required for Arise's clients. Respondent argues that Claimant did not need two monitors. The testimony regarding the need to have multiple programs open at once when answering customer questions together with the need to satisfy the obligation to limit average times per call suggests that two monitors was not a luxury. Respondent also argues that its Exhibit 63 reflects Claimant only incurring expenses of $157.98. The testimony at Final Hearing from both Claimant and Mr. Latif reflected that Mr. Latif advanced monies for the Claimant, which monies were fully reimbursed by Mr. Abdul-Haqq.

Accordingly, I find that Claimant is entitled to the $1,335.00 in equipment and training costs plus the $5,191.00 in minimum wages for the time spent in training and certification, for a total of $6,526.00. No evidence or argument was presented to counter the statutory entitlement to liquidation. Accordingly, I find and award the total sum of $13,052.00 in favor of Ayub Abdul-Haqq and against Arise Virtual Solutions, Inc.

## CONCLUSION

As the Claimant prevailed in his claim and against the counterclaim and Respondent has failed to prove its cross-claim, the Claimant is the prevailing party in this matter. As the Fair Labor Standards Act provides for prevailing plaintiff attorney's fees, a telephone conference will be scheduled by AAA within

Case No. 32-160-00496-13

two weeks of this Interim Award to discuss the filings to be submitted regarding reasonable attorney's fees and costs.

This Interim Award resolves all issues raised in the Claimant's Demand, Respondent's Answer, Affirmative Defenses, Counterclaim and Cross-Claim, the Claimant's Answer and Affirmative Defenses to the Counterclaim and Cross-Claim.

All prior orders, to the extent not inconsistent with this Interim Award, or superseded by prior order, are hereby ratified, confirmed and made part of this Interim Award.

**DONE AND ORDERED** this 15th day of April, 2015.

*Karen Evans*

KAREN EVANS, ESQUIRE
Arbitrator