## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| DONNA BELL, INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS; | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:21-cv-00538-RK |
| v. | ) ) | |
| ARISE VIRTUAL SOLUTIONS, INC., | ) ) | |
| Defendant. | ) | |

## ORDER

Now before the Court are (1) Plaintiff Donna Bell's motion for conditional class certification pursuant to 29 U.S.C. § 216(b) (Doc. 2), and (2) Defendant Arise Virtual Solutions, Inc.'s motion to compel arbitration and stay these proceedings (Doc. 13). The motions are fully briefed. (Docs. 14, 22, 26, 28, 34, 35.) In addition, the parties provided supplemental briefing as requested by the Court (Doc. 39). (Docs. 40, 41, 42.) For the reasons below, the Court **ORDERS** as follows:

(1) Defendant Arise's motion to compel arbitration as to Plaintiff Bell's claims is **GRANTED** and Plaintiff Bell's claims are **STAYED** pending arbitration, and

(2) Plaintiff Bell's motion for conditional class certification pursuant to § 216(b) is **DENIED as moot**.

### I. Background

In a Complaint filed July 27, 2021, Plaintiff alleges Defendant Arise misclassified Plaintiff and other "Customer Support Professionals" as independent contractors when in reality, under federal law, they are employees of Defendant. (*See* Doc. 1 at 1.) Plaintiff alleges she and other Customer Support Professionals work from their homes or other remote locations and provide customer service for Defendant's clients by telephone. By classifying Customer Support Professionals like Plaintiff as "Independent Business Owners" or agents of Independent Business Owners, Bell alleges Defendant Arise unlawfully avoids paying them minimum wage, requires them to pay for training and other necessary expenses to perform their work, and does not pay them for extensive training time. (*Id.* at 1-2.)

## II. Discussion

### A. Preliminary Issues

The procedural posture of this case as it has developed raises a preliminary procedural issue the parties have squarely placed before the Court. The day after filing her complaint against Defendant, Plaintiff filed a motion for conditional certification. (Doc. 2.) Defendant was not served until August 10, 2021, and its answer was therefore not due until August 31, 2021. (*See* Doc. 4.) On August 31, 2021, Defendant filed its answer and motion to compel arbitration and stay proceedings, along with a motion for extension of time to file a response to Plaintiff's motion for conditional certification. (Docs. 13, 15, 16.) On September 14, 2021, the parties jointly filed a stipulated briefing schedule to fully brief both pending motions. (Doc. 23.) The following day, the Court entered an order setting a briefing schedule for both motions pursuant to the parties' joint stipulation. (Doc. 24.)

In their briefing as to both motions, each party argues the motion it filed should be decided first. Plaintiff argues her motion for conditional certification must be decided first, and should the motion be granted and notice issued, Defendant's motion to compel should be decided later at the "second stage" of conditional certification. Defendant disagrees and argues its motion to compel Plaintiff to arbitration of her claim must be decided first because arbitrability is a threshold issue.

It does not appear the Eighth Circuit has specifically addressed the issue the parties first place before the Court: when a motion for conditional certification under the FLSA and a motion to compel arbitration as to the sole named plaintiff are simultaneously pending, should one necessarily be decided before the other?

At least one other Circuit Court of Appeals has undertaken to answer this question. In doing so, the Fifth Circuit held by presenting a "threshold question," a motion to compel arbitration as to the sole named plaintiff must be decided prior to a plaintiff's motion for conditional class certification. *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 376-77 (5th Cir. 2016); *see Edwards v. Doordash*, 888 F.3d 738, (5th Cir. 2018) (holding district court did not err in ruling on defendant's motion to compel arbitration before ruling on plaintiff's motion for conditional certification). Other district courts that have addressed this question generally agree. *See, e.g.*, *Gillespie v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2021 WL 5280568, at *1-2 (D. Ariz. Nov. 12, 2021); *Leitzke v. JPMorgan Chase Bank, N.A.*, No. 8:19-cv-

2

2174-T-33AEP, 2020 WL 8669703, at *3-4 (M.D. Fla. Jan. 27, 2020); *Green v. U.S. Xpress Enters., Inc.*. 434 F. Supp. 3d 633, 638 n.3 (E.D. Tenn. Jan. 17, 2020); *Doe #1 v. Déjà Vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730, at *8 (M.D. Tenn. Sept. 1, 2017) (recognizing "courts generally consider the motion to compel arbitration first and, then, if the motion to compel is denied, whether conditional certification is appropriate" and holding defendant's motion to compel arbitration must take precedence, denying plaintiff's motion to hold defendant's motion to compel arbitration pending plaintiff's motion for conditional certification) (collecting cases); *see also Bryant v. Toppers Int'l, Inc.*, No. 3:20-CV-61 (CDL), 2021 WL 299253 (M.D. Ga. Jan. 28, 2021) (granting defendant's motion to compel arbitration while plaintiff's motion for conditional certification was pending); *Ferrell v. SemGroup Corp.*, No. 19-CV-00610-GKF-JFJ, 2020 WL 8836056, at *1-2 (N.D. Okla. April 22, 2020) (granting defendant's motion to stay briefing as to any motion for conditional certification until defendant's motion to dismiss and compel arbitration is resolved); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-cv-1001-ARR-GRB, 2018 WL 3235545, at *3-8 (E.D.N.Y. July 2, 2018) (deciding defendant's motion to compel prior to plaintiff's motion for conditional certification and finding as moot plaintiff's motion for conditional certification upon granting defendant's motion to compel arbitration); *Fears v. Auto Reflections, Inc.*, No. 1:17-cv-2632-TCB, 2018 WL 4846531, at *1 (N.D. Ga. Feb. 8, 2018) (rejecting plaintiff's argument that defendant's motion to compel arbitration was premature because plaintiff's had not yet moved for class certification and the deadline for doing so had not yet passed); *but see Monplaisir v. Integrated Tech Grp., LLC*, No. C 19-01484 WHA, 2019 WL 3577162 (N.D. Cal. Aug. 6, 2019) (granting plaintiff's motion for conditional certification and holding defendant's motion to compel arbitration in abeyance pending the running of the opt-in period); *Brooks v. C.H Robinson Int'l, Inc.*, No. 4:16-cv-00939-761-HFS, 2017 WL 10506772 (W.D. Mo. May 9, 2017) (granting plaintiff's motion to stay consideration of defendant's motion to compel arbitration pending a ruling on plaintiff's motion for conditional certification).

In arguing that the Court should consider Plaintiff's motion for conditional certification first and to allow notice to be sent to potential opt-in plaintiffs prior to resolving Defendant's motion to compel arbitration, Plaintiff argues the issue of arbitration is a "merits-based determination that should be addressed at the second stage of the conditional certification process." (Doc. 28 at 6.) Many of the cases on which Plaintiff rely in support of this proposition, however, only consider the existence of an arbitration agreement in the context of deciding a motion for

3

conditional certification (i.e., whether an arbitration agreement is a basis to *deny* a motion for conditional certification)[1] and whether notice should be issued to include potential opt-in plaintiff-employees identified as having signed arbitration agreements.[2]  Courts in this district generally agree with this great weight of authority as to these limited circumstances that are different from the threshold question in this case.  *See Vallone v. CJS Sols. Grp., LLC*, 437 F. Supp. 3d 687, 692 (D. Minn. 2020) (declining to deny conditional certification because some plaintiffs signed arbitration agreements); *Grove v. Meltech, Inc.*, No. 8:20CV193, 2020 WL 7133568, at *4 (D. Neb. Dec. 3, 2020) (noting in ruling on plaintiff's motion for conditional certification, "[t]he defendants' only argument against the conditional certification motion is based on arbitration clauses of the plaintiffs' and potential conditional collective class members' contracts"); *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 817-18 (W.D. Mo. Nov. 8, 2005) (rejecting defendant's argument that conditional certification is improper because of the existence of arbitration agreements); *see also Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1074-75 (W.D. Mo. Mar. 23, 2020) (rejecting defendant's argument to exclude from receiving notice of conditional certification those it identified as signing an arbitration agreement because defendant failed to satisfy the standard set forth in *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir.

---

[1] *Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20-CV-01093-LHK, 2020 WL 7342709, at *9-10 (N.D. Cal. Dec. 14, 2020) (holding the existence of arbitration agreements does not prevent conditional class certification); *Bradford v. Team Pizza, Inc.*, No. 1:20-cv-60, 2020 WL 3496150, at *5 (S.D. Ohio June 29, 2020) (same); *Vallone v. CJS Sols. Grp., LLC*, 437 F. Supp. 3d 687, 691-92 (D. Minn. Feb. 5, 2020) (declining to deny conditional certification "because some putative Plaintiffs ostensibly signed arbitration agreements"); *Cuevas v. ConAm Mgmt. Corp.*, No. 18cv1189-GPC(LL), 2019 WL 5320544, at *4-5 (S.D. Cal. Oct. 21, 2019) (holding that "conditional certification is not defeated because certain California employees signed arbitration agreements"); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220 (PAE) (RWL), 2019 WL 4493429, at *14 (S.D.N.Y. Sept. 9, 2019) (rejecting defendant's argument that plaintiff's motion for conditional certification must be denied because of the existence of arbitration agreements); *Gathmann-Landini v. Lululemon USA Inc.*, No. 15-6867 (JMA)(AYS), 2018 WL 3848922, at *1 n.2 (E.D.N.Y. Aug. 13, 2018); *Racey v. Jay-Jay Cabaret, Inc.*, No. 15 Civ. 8228 (KPF), 2016 WL 3020933, at *5 (S.D.N.Y. May 23, 2016); *Williams v. Ornainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *7 (S.D. Ala. Jan. 21, 2016)
[2] *Filho v. OTG Mgmt, LLC*, No. 19-CV-8287 (ALC)(SN), 2021 WL 1191817, at *6-7 (S.D.N.Y. Mar. 30, 2021); *Barone v. LAZ Parking Ltd., LLC*, No. 3:17-CV-01545(VLB), 2019 WL 5328832, at *6 (D. Conn. Oct. 20, 2019); *Lancaster v. FQSR*, No. TDC-19-2632, 2020 WL 5500227, at *7-8 (D. Md. Sept. 11, 2020); *Delara v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:19-cv-00022-APG-NJK, 2020 WL 2085957, at *5-6 (D. Nev. April 30, 2020); *Mode v. S-L Distrib. Co., LLC*, No. 3:18-cv-00150-RJC-DSC, 2019 WL 1232855, at *4 (W.D.N.C. Mar. 15, 2019); *Lijun Geng*, 2019 WL 4493429, at *15 (holding even employees who defendants identify as having signed arbitration agreements should receive notice and the arbitration issue can be decided at the second stage of certification)

2020) and *In re JP* Morgan *Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019) for excluding arbitration employees from conditional certification notice).

The Court finds persuasive the Fifth Circuit's reasoning in *Reyna* and the cases supporting the *Reyna* ruling. Additionally, the Court finds the cases on which Plaintiff relies are inapposite and not persuasive in the context of this case. The Court will therefore rule on Defendant's motion to compel arbitration first.[3]

## B. Defendant Arise's Motion to Compel Arbitration

Section 2 of the Federal Arbitration Act (FAA), its primary substantive provision, states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Under § 3, a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner

---

[3] To date, Plaintiff has filed opt-in consent forms for eighteen opt-in plaintiffs, the great majority of which were filed prior to the full briefing of the two pending motions pursuant to the parties' joint briefing schedule. (Docs. 19, 27, 29, 32, 36, 37, 38, 43, 44.) These individuals have "opted-in" to this collective action before Plaintiff's motion for conditional certification has been addressed. It is not immediately clear their status in relation to this case, having opted-in prior to the case being conditionally certified under § 216(b). *See also Cramer v. Arkesia, Inc.*, 311 F. Supp. 3d 773, 775-76 (E.D. Va. 2018) (conditional certification is "merely a 'case management tool'" and once a named plaintiff files an action on behalf of herself and others similarly situated and opt-in employee consents by filing opt-in notice "'the opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them'") (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (quoting *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018)); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (noting "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court") (citations omitted). At least one district court, after granting defendant's motion to compel the named plaintiff to arbitration, declined to dismiss the entire action so that the opt-in plaintiffs, even before plaintiff's motion for conditional certification was decided, could amend the complaint and substitute a named plaintiff. *Myers v. TRG Customer Sol., Inc.*, No. 1:17-cv-00052, 2017 WL 5478398 (M.D. Tenn. Nov. 15, 2017). Nevertheless, the Court emphasizes that while Defendant has argued throughout its briefing that the opt-in plaintiffs are also covered by arbitration agreements (an assertion Plaintiff contests in her briefing), Defendant has at this stage only filed a motion to compel <u>Plaintiff Bell</u> to arbitration.

provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4). "These provisions reflect both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Driver v. BPV Mkt. Place Inv'rs, L.L.C.*, No. 4-17-cv-1607-CAS, 2018 WL 3363795, *4 (E.D. Mo. July 10, 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (other citation and internal quotation marks omitted).

"Because arbitration is a matter of contract, whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) (citations and internal quotation marks omitted). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* at 968 (citing *Faber v. Menard*, 367 F.3d 1048, 1052 (8th Cir. 2004)). When presented with a motion to compel arbitration, the Court's role is limited to two inquiries: "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 783-84 (8th Cir. 2016) (citation and quotation marks omitted). "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Driver*, 2018 WL 3363795, at *4 (citation and quotation marks omitted).

In its motion to compel arbitration and stay proceedings as to Plaintiff, Defendant references three separate categories of agreements, each containing an arbitration provision:

(1) three "Master Services Agreement" contracts signed by a "Service Partner" (Infinite Work Solutions LLC; Caring is Giving, LLC; or Virtual Money Makers, LLC) and Defendant Arise;

(2) three "Acknowledgment and Waiver Agreement" contracts signed by Plaintiff and a Service Partner (Infinite Work Solutions, Caring is Giving, and Virtual Money Makers); and finally,

(3) five "Statement of Work" agreements signed by Service Partners Infinite Work Solutions or Caring is Giving and Defendant Arise.

6

Defendant attached the eleven signed agreements to a declaration by Arise's Senior Manager, Contracting, filed in support of its motion to compel arbitration, (Doc. 14-1).[4]

As best the Court can discern, the Master Services Agreements allow the Service Partner license to use Defendant Arise's platform or technology to ultimately provide call center services for third-party clients of Arise. The Service Partner then enters (again with Defendant) Statement of Work agreements in order to provide call center services to a particular third-party client. Finally, Customer Service Professionals like Plaintiff enter an agreement with a particular Service Partner (including the Acknowledgment and Waiver Agreements) in order to provide actual call center services for that Service Partner and third-party client.

Although not clear, in its initial briefing Defendant appears to specifically reference the arbitration provisions contained in the Acknowledgment and Waiver Agreements and Statement of Work agreements, although it also suggests it refers to all three collectively as the "arbitration agreement" at issue. For her part, Plaintiff argues briefly in her initial filings that she did not sign the Master Services Agreements or Statement of Work agreements put forth by Defendant. (Doc. 28 at 12.) In addressing the "arbitration agreement" and "delegation clause" in her briefing, however, it is not clear to which agreement Plaintiff specifically refers.

1.      **Which agreements, if any, are enforceable by Defendant against Plaintiff?**

A cursory review of the three categories of agreements Defendant sets forth in support of its motion to compel Plaintiff to arbitration reveals that *none* are signed by both Arise and Bell. For instance, the Master Services Agreements and Statement of Work agreements are signed by Defendant and a Service Partner but not Plaintiff,[5] and the Acknowledgment and Wavier Agreements are signed by Plaintiff and a Service Partner but not Defendant.

Generally, as a basic foundational principal of contract law, "a party who has not agreed to arbitrate a dispute cannot be forced to do so." *Lofton v. Hots, Inc.*, No. 3:20-cv-05107-MDH, 2021 WL 3423549, at *1 (W.D. Mo. Aug. 5, 2021) (citing *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 648 (1986)); *see Rent-A-Center*, 561 U.S. at 67 ("The FAA reflects the

---

[4] The arbitration provisions of each of the three categories of agreements referenced above are set forth in the attached Appendix: Appendix A (Master Services Agreements), Appendix B (Statement of Work agreements), and Appendix C (Acknowledgment and Waiver Agreements).

[5] Nor does it appear Plaintiff signed any Master Services Agreement or Statement of Work relied on by Defendant on behalf of the signing Service Partner.

fundamental principle that arbitration is a matter of contract.").  At the same time, however, courts recognize circumstances in which a signatory can enforce an arbitration agreement as against a non-signatory to the agreement, and vice versa.  *See generally Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 & 799 (8th Cir. 2005).

Because the parties did not squarely address the three agreements in this context, the Court ordered the parties to provide supplemental briefing on this issue.  In its supplemental briefing, Defendant argues Plaintiff should be compelled to arbitration under any of the three categories of agreements.  Specifically, Defendant (as a non-signatory) argues it can enforce the arbitration provision in the Acknowledgment and Waiver Agreements against Plaintiff (a signatory) because Defendant is an expressly stated third-party beneficiary to those agreements.  Secondly, Defendant (as a signatory) argues it can enforce the arbitration provision in the Master Services Agreements and Statement of Work agreements against Plaintiff (a non-signatory) under the theories of estoppel and agency, and because Plaintiff is "covered by the express terms of those agreements."

In her supplemental response, Plaintiff does not address the enforceability of the arbitration provision in the Acknowledgment and Waiver Agreements.  At the same time, Plaintiff does not contest she signed these agreements or that they are invalid other than her argument they are unenforceable because they are unconscionable, as discussed below.  Indeed, despite the Court's order that the parties address each of the three agreements in this context and Defendant's specific assertion that it may enforce the Acknowledgment and Waiver Agreements as a non-signatory – to which she had ample opportunity to respond – Plaintiff only argues Defendant cannot compel arbitration under the other two categories of agreements that Plaintiff did not sign (the Master Services Agreements and Statement of Work agreements), and reiterates her argument that the Acknowledgment and Waiver Agreements are unenforceable because they are unconscionable under Missouri law.  (Doc. 41 at 9-13.)  Thus, the Court first considers whether Defendant may enforce the Acknowledgment and Waiver Agreements generally as a non-signatory. [6]

---

[6] Before proceeding further, the Court notes that throughout her briefing Plaintiff refers to a "delegation clause," although it is not clear to what provision in any document she is referring.  Each agreement set forth by Defendant generally states that arbitration under the agreement is governed by the "then-current rules established by the American Arbitration Association ('AAA')" and that the "nature of the claims asserted will determine which body of AAA rules will apply," although the most recent of the Acknowledgement and Waiver Agreements alone specifically references the "then-current Commercial

8

Whether a non-signatory can enforce an arbitration provision against a signatory is controlled by state contract law. *Torres*, 781 F.3d at 971. Under Missouri law, third-party beneficiaries may enforce the terms of a contract so long as "'the terms of the contract . . . clearly express intent to benefit the party.'" *Id.* (quoting *Vernie v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)). Without language in the contract expressly indicating the intent to benefit a particular third party, "there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." *Vernie*, 212 S.W.3d at 153 (citation and quotation marks omitted). In determining the parties' intention, courts must look to the "four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002) (citation and quotation marks omitted).

"'[M]ere incidental benefit to the third party'" does not permit a third party to otherwise enforce a given agreement against a signatory under Missouri law. *Torres*, 781 F.3d at 971 (quoting *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007)). Rather, "[a] party claiming rights as a third-party beneficiary has the burden of showing that provisions in

---

Arbitration Rules and Mediation Procedures or the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association (the 'AAA')." *See* Appendix A, B, C.

It is well-accepted that "[p]arties can agree to have arbitrators decide threshold questions of arbitrability." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Sometimes, by incorporating AAA rules that provide the arbitrator with the power or authority to determine its own jurisdiction (including the existence, scope or validity of the arbitration agreement and the existence or validity of a contract of which the arbitration clause is a part), courts have found the arbitration agreement at issue thus "constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability for the arbitrator." *Fallo v. High-Tech Instit.*, 559 F.3d 874, 878 (8th Cir. 2009). When this is the case, the only question that remains for the court, if it is challenged, is whether the delegation provision itself is valid under state contract law principles. *See Shockley v. PrimeLending*, 929 F.3d 1012, 1018 (8th Cir. 2019).

Here, though, the parties make no meaningful or discernable distinction when addressing the enforceability of the arbitration provision and the "delegation clause" to which Plaintiff vaguely refers in her briefing. As best as the Court can discern, this is because each of the agreements on which Defendant relies to compel Plaintiff Bell to arbitration expressly delegates arbitrability as follows: "Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator." Thus, as the parties have done throughout their extensive briefing, and without any argument or suggestion to the contrary whatsoever by the parties, the Court proceeds with the understanding it may address arbitrability issues *other than* the scope of the arbitration agreement. *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (citation and quotation marks omitted) (cleaned up); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("courts must rigorously enforce arbitration agreements according to their terms") (citation and quotation marks omitted).

the contract were intended for [its] direct benefit" because third-party "contract rights are only enforceable if the promisor assumed a direct obligation to the third-party beneficiary." *Hilliker Corp. v. Watson Prop., LLC*, __ S.W.3d __, 2022 WL 97284, at *2 (Mo. Ct. App. Jan. 11, 2022) (slip op.) (citing *Fed. Deposit Ins. Corp. v. G. III Invs., Ltd.*, 761 S.W.2d 201, 204 (Mo. Ct. App. 1988); *see L.A.C.*, 75 S.W.3d at 260. Status as a third-party beneficiary requires more than simply a "desire or purpose" that a third-party benefit from the contract. *McKenzie v. Columbian Nat'l Title Ins. Co.*, 931 S.W.2d 843, 845 (Mo. Ct. App. 1996). A third-party beneficiary is one who benefits from the contract because the contract's purpose is to (1) make a gift to the third party or confer on the third party "a right against the promisor to some performance neither due nor supposed nor asserted to be due from the promisee to the [third party]," or (2) satisfy some duty of the promisee to the third party. *L.A.C.*, 75 S.W.3d at 260.

Here, the agreement in question expressly includes that Defendant is a third-party beneficiary and has the right to enforce the agreement. Paragraph 12 of the Acknowledgment and Waiver of Agreements provides:

> Company [that is, a particular Service Partner] and Individual [that is, Plaintiff Bell] acknowledge and agree that Arise and any client of Arise are intended third party beneficiaries of this agreement, and the rights and remedies hereunder, and any of them jointly or severally shall have the right to enforce this agreement.

(Doc. 14-1 at 77, 82, 87.) Furthermore, the agreement sets out the Service Provider's responsibility to compensate Plaintiff and expressly states that Defendant is not obligated to compensate Plaintiff. Additionally, the agreement provides that Plaintiff (1) waives any right to assert certain claims against Arise, or (2) agrees that certain claims against Arise will be arbitrated consistent with a pre-existing agreement between the Service Provider and Defendant under which they must arbitrate claims and which includes Arise's obligation to arbitrate claims or disputes it may have as to Plaintiff. Thus, it appears Defendant is a named third-party beneficiary who is entitled to enforce the Acknowledgment and Waiver Agreements against Plaintiff, a signatory to the Master Services Agreements presented here. *Cf. Cent. Trust Bank v. Graves*, 495 S.W.3d 797, 803 (Mo. Ct. App. 2016) (finding a party was not a third-party beneficiary to a contract because no part of the contract "impos[ed] a direct obligation on behalf of either" of the signatories in favor of the third party and the third party thus only received incidental benefits from the contractual relationship rather than the contract itself).

## 2. Are the Acknowledgment and Waiver Agreements unconscionable and thus unenforceable?

Having found that Defendant may as a non-signatory enforce the arbitration provision in the Acknowledgment and Waiver Agreements to which Plaintiff is a signatory, the Court now considers whether the arbitration agreement in these contracts is valid and otherwise enforceable.[7] (From here, the Court may refer to the Acknowledgment and Waiver Agreements as the "arbitration agreement.")

A valid arbitration contract, under Missouri law, requires "offer, acceptance, and bargained for consideration," the latter which is "a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *TD Auto Fin., LLC v. Bedrosian*, 609 S.W.3d 763, 768 (Mo. Ct. App. 2020) (citation and quotation marks omitted); *see also Vest v.*

---

[7] In both the initial and supplemental briefing, Defendant argues Florida law applies to the Acknowledgment and Waiver Agreements because it "expressly refers" to the other agreements which, Defendant states, include a choice-of-law provision pointing to Florida, rather than Missouri, law. (Doc. 40 at 15.) Specifically, Defendant points to paragraph 6 of the Acknowledgment and Waiver Agreements that states, in relevant part:

> Individual acknowledges and understands that [the Service Provider] and Arise have entered into an agreement which provides for the resolution of any and all disputes or claims each may have against the other (and/or against any Arise client) by binding arbitration and that Arise's obligation to arbitrate disputes and claims under that agreement extends to disputes and claims that Arise may have against individual.

Generally, though, "[t]o incorporate terms from another document, the contract must make clear reference to the document and describe it in such terms that its identity may be ascertained beyond a doubt. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810 (Mo. 2015) (citation and quotation marks omitted). "Mere reference" to even a specific contract or agreement, even one attached to the contract in question, is not sufficient to incorporate by reference particular provisions of that attached contract within the contract in question. *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. banc 2003); *see also Hardwood Lumber, Inc. v. Brewco Inc.*, No. 3:18-05088-CV-RK, 2019 WL 1672295, at * (W.D. Mo. April 17, 2019) (finding reference to a "warranty agreement" in the invoice did not incorporate by reference the warranty agreement in the invoice because it failed to sufficiently identify the terms and provisions of the warranty agreement); *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580, 584 (Mo. Ct. App. 2013) (finding reference to the NFL's constitution and bylaws did not incorporate the terms of those documents into the agreement in question).

The Court does not find the Acknowledgment and Waiver Agreements Plaintiff signed with various Service Partners incorporates the earlier agreement by merely referring to the agreement or, specifically, the choice-of-law provision contained in one or both of those agreements. Thus, because Plaintiff worked and resided in Missouri, Missouri law controls, at least as to the Acknowledgment and Waiver Agreements. *See Lofton v. Hots, Inc.*, No. 3:20-cv-05107-MDH, 2021 WL 3423549, at *1 (W.D. Mo. Aug. 5, 2021).

*Cracker Barrel Old Cty. Store, Inc.*, 371 F. Supp. 3d 593, 598-601 (W.D. Mo. 2018) (finding arbitration agreement a valid agreement with adequate offer, acceptance, and consideration under Missouri law). Plaintiff makes no argument in either her initial or supplemental briefing the arbitration agreements, let alone the Acknowledgment and Waiver Agreements specifically, are invalid contracts under these basic principles of contract formation. Instead, she argues only the arbitration provision is invalid under the "traditional state-law defense[]" of unconscionability. *Id.* at 601; *see Torres*, 781 F.3d at 968 ("Because arbitration is a matter of contract, whether an arbitration provision is valid is a matter of state contract law, and an arbitration provision may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]") (citations and quotation marks omitted).

Under Missouri law, "[a]n unconscionable contract or clause of a contract will not be enforced." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. banc 2006) (citations omitted). Missouri courts define unconscionability to mean "'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426 (Mo. banc 2015) (citation omitted). Missouri courts "look to both the procedural and substantive aspects of a contract to determine whether, considered together, they make the agreement or provision in question unconscionable," rather than determining whether the agreement is separately both procedurally and substantively unconscionable. *Id.* (citation omitted); *see also Franklin v. Cracker Barrel Old Cty. Store*, No. 4:17 CV 00289 JMB, 2017 WL 7691757, at *5 (E.D. Mo. April 12, 2017) (noting Missouri courts no longer apply a dual-track framework that looks to substantive and procedural unconscionability but instead evaluates unconscionability in the context of contract formation of the particular agreement) (citing *Torres*, 781 F.3d at 969); *Andrulis v. Sw. Mo. Invs., Inc.*, No. 08-03166-CV-S-JTM, 2009 WL 10671755, at * (W.D. Mo. Mar. 5, 2009) (noting Missouri courts "ascertain[] the totality of the circumstances weighing evidence of both procedural and substantive unconscionability") (citing *Whitney v. Alltel Comms., Inc.*, 173 S.W.3d 300, 309 (Mo. Ct. App. 2005)).

Several of the "fact-specific" indicators of a particular agreement's unconscionability include:

> high pressure sale tactics, unreadable fine print, misrepresentation or unequal bargaining positions . . . whether the terms of an arbitration agreement are unduly harsh . . . [or] are so one-sided as to oppress or unfairly surprise an innocent party

or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue.

*Brewer v. Mo. Title Loans*, 364 S.W.3d 486, 489 n.1 (Mo. banc 2012) (citations omitted).

Plaintiff argues the arbitration agreement is unconscionable and thus unenforceable primarily for three reasons: (1) the agreement is an adhesion contract drafted exclusively by Defendant for which she had no opportunity to negotiate; (2) the arbitration provision in the agreement is "buried" in the agreement and is "replete with legalese"; and (3) the agreement may require cost-splitting if it is ultimately found by the arbitrator to be governed by the AAA Commercial Arbitration Rules and Mediation Procedures. The Court does not find persuasive Plaintiff's arguments to support her contention the arbitration agreement within the Master Services Agreement is unconscionable and thus unenforceable.

First, Plaintiff argues the arbitration agreement is unconscionable because it is an adhesion contract drafted wholly by Defendant and presented on a "take-it-or-leave-it" basis without any opportunity for negotiation. While adhesion contracts – described by Missouri courts as a "form contract created and imposed by a stronger party upon a weaker party on a 'take this or nothing basis,'" including, for example, "pre-printed form contract[s]," *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo. Ct. App. 2003) (citations and quotation marks omitted) – may be procedurally unconscionable, they are not automatically so. *Id.* (noting there is nothing "inherently sinister and automatically unenforceable" about an adhesion contract) (citation and quotation marks omitted).

Whether an adhesion contract is unconscionable depends on its terms and the reasonable expectations of persons that would sign such a contract or agreement. *Rose v. Sabala*, 632 S.W.3d 428, 434 (Mo. Ct. App. 2021) (an adhesion contract is unconscionable when its "terms . . . are outside and beyond the reasonable expectations of the person signing the contract"). This is an objective, rather than subjective, analysis. *See id.* ("Reasonable expectations" are those of "the average member of the public who accepts such a contract") (citation omitted). In other words, an unconscionable agreement or provision is one that "fail[s] to comport with those reasonable expectations and [is] unexpected and unconscionably unfair." *Swain*, 128 S.W.3d at 107 (finding "an average person would reasonably expect that disputes arising out of an agreement like this [the purchase of a vehicle service plan alongside a vehicle purchase] might have to be resolved in arbitration").

13

Missouri courts are clear that a form contract, including a contract given on a "take-it-or-leave-it" basis will not be found to be inherently unconscionable, particularly when the plaintiff is not obligated to enter into a particular transaction or relationship with a defendant. *Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 2705506, at *2 (W.D. Mo. July 9, 2008). Importantly in the context of the instant case, this principle has been specifically applied by Missouri courts in the employment context. *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. Ct. App. 2003) (employment contract not adhesion contract or unconscionable despite disparate bargaining power vis-à-vis the employer and employee); *Whelan Sec. Co., Inc. v. Allen*, 26 S.W.3d 592, 596 (Mo. Ct. App. 2000) ("[T]he fact that an employment contract is a prerequisite to employment does not force the employee to accept and execute it; the employee has the option of foregoing the employment if the terms of the agreement are not satisfactory.") (collecting cases). Moreover, whether a contract of adhesion is unenforceable as unconscionable depends on whether the terms are "outside and beyond the reasonable expectations of the person signing the contract." *Rose*, 632 S.W.3d at 434 (citations and quotation marks omitted). This inquiry depends on both the contractual language and the "totality of the circumstances surrounding the transaction" to ascertain whether the "average member of the public who accepts such a contract" would expect such terms or provisions. *Id.* (citations and quotation marks omitted).

In *Rose*, for instance, the court of appeals found as unconscionable a separate arbitration agreement that was referenced on the sales receipt the customer actually signed because the sales receipt only mentioned that disputes generally would be settled by arbitration, without specifying the actual scope of such disputes. Specifically, the court held:

> [W]e conclude that a reasonable party signing a store receipt to acquire a wireless telephone would not expect that they were consenting to provisions affecting their legal protections from the kind of misconduct alleged by Plaintiff [where a store employee allegedly transferred several images from Plaintiff's phone to his email account while Plaintiff was exchanging her phone for a newer model phone]."

*Id.* at 435.

Here, however, in the context of seeking to provide call-center services for a particular third-party client of Defendant using Arise's technology or platform, Plaintiff signed documents titled "Acknowledgment and Waiver Agreement" that only considered the rights and responsibilities vis-à-vis Plaintiff, a particular Service Provider, and Arise, including the obligation to arbitrate claims by or against each other. A reasonable individual in Plaintiff's position signing

14

such an agreement in order to work and provide call-center services to a particular client using Arise's technology or platform would expect they were consenting to provisions that affect their legal protections and any available legal recourse for the kinds of issues that may arise between Plaintiff, the Service Provider, Arise, and Arise's client, that were expressly laid out in the agreement. Plaintiff's reliance on *Rose* (and similar cases[8]) is unavailing.

The same holds true for Plaintiff's argument that the arbitration provision is unconscionable because it is "buried" in the agreement and "replete with legalese." In support of this argument, Plaintiff relies on a case from the Northern District of California, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2016), finding an arbitration provision unconscionable for these reasons. In *Saravia*, however, the court found the arbitration provision was "buried in the middle of more than ten pages of mostly boilerplate language" in larger operating agreements. *Id.* at 420. Here, however, the Acknowledgment and Waiver Agreements consist of just over two pages with fourteen separately numbered paragraphs specifically detailing the responsibilities and rights as to compensation and benefits for call-center services performed by Plaintiff as to the Service Partner and Defendant, as well as available legal recourse (that is, arbitration) for Plaintiff if a dispute or claim arises concerning the Service Partner, Arise, and Arise's third-party client. *See also Kenner v. Career Educ. Corp.*, 2011 WL 5966922, at *4 (E.D. Mo. Nov. 29, 2011) (finding the arbitration clause not unconscionable in part because it was "not buried in fine print, but in the same clear font style and size as other terms, with the words, 'Dispute Resolution' in bold"). The agreement in its entirety sets out a number of claims that must be resolved by arbitration and other rules governing arbitration of these claims, and the waiver of judicial remedies. It is not clear the "legalese" to which Plaintiff refers in asserting this argument.

---

[8] In *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300 (Mo. Ct. App. 2005), for instance, the court of appeals concluded an arbitration clause in an agreement sent to plaintiff-consumer on a take-it-or-leave-it basis was unconscionable because the provision was "in fine print on the back side of a sheet sent to [the plaintiff-consumer] with his regular bill" and, ultimately, required arbitration of claims related to a per-month 88-cent charge and the customer to bear the costs of such arbitration. *Id.* at 313-14. Similarly, in *Brewer*, the Missouri Supreme Court held an arbitration agreement was unconscionable because the one-sided and non-negotiable agreement required the consumer to arbitrate claims against the company while the company retained its right to judicial and other self-help remedies and the agreement required the parties to bear their own costs in arbitration. 364 S.W.3d at 493-95. Largely, the factors present in *Rose*, *Whitney*, and *Brewer* that led Missouri courts to find the arbitration agreements unconscionable are not present here. And in any case, the caselaw requires the Court to look at the totality of the circumstances of the particular arbitration agreement placed before it.

Finally, Plaintiff argues the potential for "cost-splitting" under the AAA rules renders the arbitration agreement unconscionable. Two of the three Acknowledgment and Waiver Agreements refer to the "then-current rules established by the American Arbitration Association (the 'AAA')" as the rules governing arbitration, while the most recent Acknowledgment and Waiver Agreement specifically refers to "either the then-current Commercial Arbitration Rules and Mediation Procedures or the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association (the 'AAA')" as the rules governing arbitration of disputes or claims. Appendix C. Each agreement states that "[t]he nature of the claims asserted shall determine which body of AAA rules will apply," that any dispute as to which rules apply will be determined by the AAA, and that "in no 'event shall the AAA's Supplementary Rules for Class Arbitration (or any analogue thereto) apply." *Id.*

Under the AAA Commercial Rules, the parties are responsible for costs as follows:

R-53. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

R-54. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

Commercial Arbitration Rules and Mediation Procedures, Rules 53 & 54, *available at*, https://www.adr.org/rules. In addition, Plaintiff points to the filing fee of $925 for arbitration under the Commercial Arbitration Rules and Mediation Procedures. *See* Administrative Fee Schedules, Commercial Arbitration Rules and Mediation Procedures, *available at*, https://www.adr.org/rules.[9]

---

[9] Comparatively, the AAA Employment Arbitration Rules and Mediation Procedures requires a $300 filing fee by an individual, with the company obligated to pay, at a minimum, a $1,900 filing fee and

In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court held that when "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing a likelihood of incurring such costs." *Id.* at 92; *accord Torres*, 781 F.3d at 969 (the challenger "bear[s] the burden of showing that individual arbitration would be prohibitively expensive, and that it is likely, as opposed to merely speculative, that the prohibitive costs will actually be incurred") (citation omitted). "The party seeking to avoid arbitration should present specific evidence of likely arbitrators' fees and [their] financial inability to pay those fees so that the court can determine whether the arbitral forum is accessible to the party." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1054 (8th Cir. 2004) (holding plaintiff failed to make the required showing because he failed to provide evidence to estimate the cost of arbitration and the amount of arbitrator's fees in addition to his specific financial situation).

In support of her opposition to Defendant's motion to compel arbitration, Plaintiff submitted a declaration attesting to her monthly income and expenses. (Doc. 28-2.) In addition, Plaintiff's counsel submitted an affidavit attesting and providing evidence as to costs counsel's firm has incurred in arbitrating various misclassification and wage claims, particularly regarding arbitrator's fees. (Doc. 28-1.) Even so, the Court finds Plaintiff has not adequately demonstrated the potential for cost-sharing in arbitration is "prohibitively expensive" in Plaintiff's case by showing "that it is likely, as opposed to merely speculative, that the prohibitive costs will actually be incurred" even if the Commercial Arbitration Rules are deemed to apply. *See Torres*, 781 F.3d at 969 (citation omitted).

Unlike other cases, *see, e.g.*, *id.* at 970, resolution of Plaintiff's unconscionability argument turns less on evidence of her individual financial ability to pay costs related to arbitration and more on specific evidence as to arbitrators' fees and costs that she is likely to incur. First, as Plaintiff herself recognizes, the arbitration agreements do not mandate the Commercial Rules apply but that the nature of the dispute will be determinative and the arbitrator is to determine any dispute as to which rules apply. At most, Plaintiff suggests "[t]o the extent any CSP's [that is, individuals like Plaintiff or customer service professionals] had to incorporate in order to contract with Arise,

---

that the company is largely responsible for resulting fees. *See* Employment Arbitration Rules and Mediation Procedures & Administrative Fee Schedules, Commercial Arbitration Rules and Mediation Procedures, *available at* https://www.adr.org/rules.

17

AAA's Rules require the Commercial Rules (and cost-splitting) would apply to their misclassification claims[.]" (Doc. 28 at 22 n.9.) But there is no indication in this case Plaintiff Bell (potentially unlike other customer service professionals) had to incorporate in order to contract with Defendant. Indeed, Plaintiff's counsel admits in an affidavit filed in support of Plaintiff's opposition to Defendant's motion to compel, "The AAA has been inconsistent in determining whether the Employment Rules or Commercial Rules will apply to [claims involving independent contractor misclassification]." (Doc. 28-1 at ¶ 2.) At the same time, Plaintiff's counsel vaguely asserts she has had "many clients who filed wage claims before the AAA under the theory that they are misclassified as independent contractors and are actually employees of the Respondent, only to have the AAA apply the Commercial Rules to the dispute." (*Id.*) In sum, though, Plaintiff largely presents no argument or evidence the Commercial Rules are likely to apply to the instant case she now brings against Defendant.[10]

Finally, even if the Commercial Rules are held by the arbitrator to apply, the arbitrator has discretion under the rules to distribute or apportion the fees, expenses, and compensation (including the fees and expenses in Rules 53 and 54). *See Kenner v. Career Educ. Corp.*, 2011 WL 5966922, at *4 (E.D. Mo. Nov. 29, 2011) (citing *Cicle*, 583 F.3d at 557)). Simply put, Plaintiff "has not provided the evidence necessary to estimate the length of the arbitration and the corresponding amount of arbitrators' fees (e.g., sophistication of the issues, average daily or hourly arbitrator costs in the region)." *Faber*, 367 F.3d at 1054. Instead, she chooses to rely on anecdotal bills relating to various preliminary issues seemingly untethered to her particular situation or the case she now brings against Defendant.[11]

---

[10] On the other hand, counsel for Defendant filed a declaration in support of its reply in support of its motion to compel arbitration that in each of 85 individual arbitrations in the context of two prior lawsuits brought against Defendant on behalf of plaintiffs by the same law firm representing Plaintiff in this action alleging similar misclassification claims, the Commercial Rules were not applied either by the parties' agreement or by the arbitrator's determination that the AAA Employment Rules apply to these similar claims. (Doc. 34-1 at ¶ 3.)

[11] Moreover, in the three invoices counsel attached to her complaint involving arbitrator's costs in a single-claimant arbitration concerning misclassification and wage claims, the respondent company paid the entirety of the arbitrator's fees. (Doc. 28-1 at ¶¶ 10-12, pp. 21-27).

Not attached to the declaration, counsel references a fourth exhibit illustrating an invoice for a single-claimant arbitration involving misclassification and FLSA claims. (Doc. 28-2 at ¶ 9.) The invoice was not attached as "Exhibit F" to the declaration and counsel does not state whether the claimant or respondent company was ultimately responsible for payment of the invoice.

Moreover, the cases on which Plaintiff relies to demonstrate the arbitration agreement is unconscionable because it is cost prohibitive are distinguishable. Contrary to Plaintiff's suggestion otherwise, the Missouri Supreme Court has not held an arbitration agreement is unconscionable solely on the basis that the parties are required to bear costs in pursuing arbitration. In *Brewer*, for instance, the Missouri Supreme Court held under the totality of the circumstances of the one-sided arbitration agreement that it was unconscionable. The agreement in that case required the consumer to arbitrate their claims but reserved the company's right to seek judicial and other redress, required the parties to shoulder their own costs, and allowed the company to seek to recover its attorney's fees in defending against the consumer's claims. *Brewer*, 364 S.W.3d at 493-95.[12] This case lacks similar characteristics alongside a fee provision (notwithstanding that even if the Commercial Rules apply the arbitrator may award costs and fees in their discretion) in *Brewer* that renders this agreement unconscionable. In addition, in *Sprague v. Household International*, the Court found based on submissions by the parties "it is more likely than not that arbitration would cost at a minimum $4,195" and that based on the plaintiff's financial affidavits the arbitration agreement "would result in the Plaintiffs being saddled with prohibitive costs." 473 F. Supp. 2d at 976. As explained above, however, Plaintiff has not provided sufficient evidence for the Court to find with any specificity that it is "more likely than not" that arbitration would cost a prohibitively excessive amount for Plaintiff to pursue her case.[13]

---

[12] Additionally, as the Missouri Supreme Court has explained of its decision in *Whitney v. Alltell Communications, Inc.*, the arbitration provision in that case "was invalidated as substantively unconscionable, partly because (1) it contained a clause that stated '[e]ach party will bear the cost of preparing and prosecuting its case' before the arbitrator"; a provision designed "to deprive the purchasers of many consumer rights under Missouri law, particularly section 407.025, which allowed a prevailing party to recover attorneys' fees," and (2) the costs of arbitration, in the context of the agreement and transaction at issue, "would far exceed any possible liability on the claims." *Schneider*, 194 S.W.3d at 860 (citing *Whitney*, 173 S.W.3d at 300 & 309). Accordingly, in *Schneider*, the Missouri Supreme Court held the arbitration provision was unconscionable based on the provision placing "all . . . attorney's fees and costs incurred by Seller" in enforcing the arbitration provision where the provision (1) placed all fees for arbitration on the consumer, and (2) effectively granted Seller "immunity from legitimate claims on the contract." *Id.* at 860-61. Contrary to *Whitney* and *Schneider*, at most Plaintiff is faced with a cost-sharing obligation under the AAA Commercial Rules (although the arbitrator retains discretion to ultimately award costs) in a way that, under the facts here, does not insulate Defendant from such claims. *Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 2705506, at *3 (W.D. Mo. July 9, 2008).

[13] Plaintiff's arguments that the arbitration agreement is unconscionable and thus unenforceable would likewise fail even if Florida law applied to the Acknowledgment and Waiver Agreement. *See, e.g.*, *Fl-Tampa, LLC v. Kelly-Hall*, 135 So.2d 563, 568 (Fla. Ct. App. 2014) (plaintiff failed to satisfy their burden to demonstrate the costs of arbitration were prohibitively high in that case and therefore that the arbitration agreement was unconscionable); *Zephyr Haven Health & Rehab Ctr., Inc. v. Est. of Clukey ex*

### 3. Conclusion

For the reasons explained above, Defendant's motion to compel Plaintiff Bell to arbitration (Doc. 13) is **GRANTED**. Plaintiff Bell shall submit her claims to arbitration in accordance with the Acknowledgment and Waiver Agreements.[14]

### C. Should Plaintiff Bell's claims be stayed or dismissed?

On granting Defendant's motion to compel arbitration, the parties disagree whether Plaintiff Bell's claims should be stayed or dismissed. In the Eighth Circuit, "[w]hile the Federal Arbitration Act 'generally requires a federal district court to stay an action pending an arbitration . . . district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021) (quoting *Green*, 653 F.3d at 769). The district court in *Sommerfeld*, for instance, decided to dismiss the action rather than stay it after finding (1) the parties entered into a valid arbitration agreement, and (2) the dispute falls within the scope of that agreement. *Sommerfeld v. Adesta, LLC*, No. 8:19CV488, 2020 WL 4589202, at *5 (D. Neb. April 28, 2020); *cf. Astarita v. Menard, Inc.*, No. 5:17-06151-CV-RK, 2018 WL 5928061, at *6 (W.D. Mo. Nov. 13, 2018) (staying rather than dismissing plaintiff's claims where the question of arbitrability is left to be determined to the arbitrator).

---

*rel. Clukey*, 133 So.3d 1230, 1232 (Fla. Ct. App. 2014) (plaintiff failed to satisfy its burden to demonstrate the arbitration agreement was substantively unconscionable because of the costs of arbitration); *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1315 (S.D. Fla. 2009) (employment contract was not procedurally unconscionable as an adhesion contract); *Stewart Agency, Inc. v. Robinson*, 855 So.2d 726, 728-29 (Fla. Ct. App. 2003) (citing *Green Tree*, finding plaintiff failed to establish substantive unconscionability based on costs of arbitration); *Cf. Dunn v. Global Trust Mgmt., LLC*, 506 F. Supp. 3d 1214 (M.D. Fla. 2020) (arbitration agreement was procedurally unconscionable where the arbitration provision was on the twelfth page of the account terms – itself opened using a separate link from the company's website – with "two pages of dense legalese").

[14] Because the Court finds Plaintiff Bell must be compelled to arbitration based on the Acknowledgment and Waiver Agreements, the Court need not decide whether the other two categories of agreements (the Master Services Agreements and Statement of Work agreements) are enforceable by Defendant as a signatory against Plaintiff as a non-signatory. As noted above, in her initial filing, none of the parties, including Plaintiff, separately addressed each of the three agreements. Instead, Plaintiff broadly argued the arbitration agreement was unenforceable because it is unconscionable. Thus, to the extent Plaintiff's response can be read as extending the same arguments to these agreements, even if they were enforceable by Defendant against her – and regardless of whether Missouri or Florida law applied in the context of those agreements for all the reasons explained above – the Court would not find the agreements to be unenforceable as unconscionable. There does not appear to be any meaningful distinction among these agreements that would require a different result.

20

Here, the Acknowledgment and Waiver Agreements clearly and unmistakably delegate authority to the arbitrator to determine issues of arbitrability specifically including "whether an issue is subject to arbitration under this agreement." *See* Appendix C. Plaintiff does not otherwise challenge this delegation clause other than her general arguments of unconscionability discussed above. As a result, the Court hereby **STAYS** Plaintiff Bell's claims pending completion of arbitration. 9 U.S.C. § 3; *see also Astarita*, 2018 WL 5928061, at *6.

    **D.**     **Plaintiff's Motion for Conditional Certification**

Because the Court finds Plaintiff Bell must arbitrate her claims against Defendant Arise, Plaintiff Bell's motion for conditional certification (Doc. 2) is **DENIED as moot**. *See also Thompson v. Body Sculpt Int'l, LLC*, No. 18-cv-1001-ARR-GRB, 2018 WL 3235545, at *8 (E.D.N.Y. July 2, 2018) (denying as moot plaintiffs' motion to conditionally certify a collective action after granting defendants' motion to compel arbitration).

**III. Conclusion**

Therefore, for the reasons explained above and after careful consideration, it is **ORDERED** that:

(1) Defendant Arise's Motion to Compel Arbitration (Doc. 13) is **GRANTED** and Plaintiff Bell's claims are **STAYED** pending arbitration, and

(2) Plaintiff Bell's Motion for Conditional Class Certification pursuant to 29 U.S.C. § 216(b) (Doc. 2) is **DENIED as moot**.

**IT IS SO ORDERED**.


                                      s/ Roseann A. Ketchmark
                                      ROSEANN A. KETCHMARK, JUDGE
                                      UNITED STATES DISTRICT COURT

DATED: February 24, 2022

Case 4:21-cv-00538-RK   Document 45   Filed 02/24/22   Page 21 of 26

## Appendix A

Master Services Agreement arbitration provision (Doc. 14-1 at 11, 21, 31):

### 15. ARBITRATION OF CLAIMS; CLASS ACTION WAIVER

15.1 Arise and Company (for purposes of this Section 15 only, "Company" also includes all Company personnel) hereby agree to resolve any and all disputes or claims they may have against the other, or against any Client, by final and binding arbitration pursuant to the then-current rules established by the American Arbitration Association (the "AAA"); provided, however, that in the event of a conflict between the AAA rules and the terms of this Section 15, the terms of this Section 15 will control. The AAA"s rules are available for review at www.adr.org. The nature of the claims asserted will determine which body of AAA rules will apply. In the event that there is a dispute regarding which AAA rules apply, the AAA will decide that issue; provided, however, that consistent with Section 15.4 in no event will the AAA"s Supplementary Rules for Class Arbitration (or any analogue thereto) apply. Arise and Company agree that the arbitration will be conducted by a single arbitrator in the AAA office nearest Company (or such other location as is mutually agreed to by the parties), and therefore waive any objections or claims they might otherwise be able to rightfully assert based upon the inconvenience of the forum or improper jurisdiction. Unless otherwise mutually agreed, the arbitrator will be either (a) a practicing attorney with at least 15 years of experience as an attorney and at least five years of experience as an arbitrator or (b) a retired judge with at least five years of experience as an arbitrator. This agreement to arbitrate applies to all claims Arise may have against Company and/or that Company may have against Arise or a Client, except that this agreement to arbitrate does not apply to any claims that as a matter of law cannot be subject to individual arbitration. Should either or both parties have a series of claims, some of which can be compelled to individual arbitration and some of which cannot be compelled to individual arbitration, both Arise and Company intend that the arbitrable claims shall be brought in individual arbitration and the non-arbitrable claims shall be brought in court.

15.2 Arise and Company expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this agreement and that judgment upon the award rendered by the arbitrator may be entered by any court of competent jurisdiction. Subject to Section 15.4 [titled, "Class Action Waiver"], questions of arbitrability (that is, whether an issue is subject to arbitration under this agreement) will be decided by the arbitrator. Procedural questions arising out of the dispute and bearing on its final disposition are also matters for the arbitrator to decide. Claims must be filed within the time set by the applicable statute(s) of limitations.

## Appendix B

Statement of Work arbitration provision (Doc. 14-1 at 38, 45, 52, 61, 70-71):

### 11. ARBITRATION OF CLAIMS; CLASS ACTION WAIVER.

11.1 Arise and Call Center Company (for purposes of this Section 11 only, "Call Center Company" also includes all Call Center Company personnel, including any Authorized User) hereby agree to resolve any and all disputes or claims they may have against the other, or against any Client, by final and binding arbitration pursuant to the then-current rules established by the American Arbitration Association (the "AAA"); provided, however, that in the event of a conflict between the AAA rules and the terms of this Section 11, the terms of this Section 11 will control. The AAA's rules are available for review at www.adr.org. The nature of the claims asserted will determine which body of AAA rules will apply. In the event that there is a dispute regarding which AAA rules apply, the AAA will decide that issue; provided, however, that consistent with Section 11.4 in no event will the AAA's Supplementary Rules for Class Arbitration (or any analogue thereto) apply. Arise and Call Center Company agree that the arbitration will be conducted by a single arbitrator in the AAA office nearest Call Center Company (or such other location as is mutually agreed to by the parties), and therefore waive any objections or claims they might otherwise be able to rightfully assert based upon the inconvenience of the forum or improper jurisdiction. Unless otherwise mutually agreed, the arbitrator will be either (a) a practicing attorney with at least 15 years of experience as an attorney and at least five years of experience as an arbitrator or (b) a retired judge with at least five years of experience as an arbitrator. This agreement to arbitrate applies to all claims Arise may have against Call Center Company and/or that Call Center Company may have against Arise or a Client, except that this agreement to arbitrate does not apply to any claims that as a matter of law cannot be subject to individual arbitration. Should either or both parties have a series of claims, some of which can be compelled to individual arbitration and some of which cannot be compelled to individual arbitration, both Arise and Call Center Company intend that the arbitrable claims will be brought in individual arbitration and the non-arbitrable claims will be brought in court.

11.2 Arise and Call Center Company expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this agreement and that judgment upon the award rendered by the arbitrator may be entered by any court of competent jurisdiction. Subject to Section 11.4 [titled, "Class Action Waiver"], questions of arbitrability (that is, whether an issue is subject to arbitration under this agreement) will be decided by the arbitrator. Procedural questions arising out of the dispute and bearing on its final disposition are also matters for the arbitrator to decide. Claims must be filed within the time set by the applicable statute(s) of limitations.

# Appendix C

<u>(1) Arbitration provision contained in two of the three Acknowledgement and Waiver Agreements</u>

<u>(Doc. 14-1 at 76-77, 81-82)</u>:

6. Individual acknowledges and understands that Company and Arise have entered into an agreement which provides for the resolution of any and all disputes or claims each may have against the other (and/or against any Arise client) by binding arbitration, and that Arise's obligation to arbitrate disputes and claims under that agreement extends to disputes and claims that Arise may have against Individual. In consideration of Arise's agreement to arbitrate disputes and claims it may have against Individual and for other good and valuable consideration, Individual agrees to arbitrate any and all disputes or claims that he or she may have against Arise or any client of Arise as set forth in Paragraphs 7 through 9 below.

7. Company and Individual hereby agree to resolve any and all disputes or claims they may have against the other, and Individual hereby agrees to resolve any and all disputes that he or she may have against Arise or any client of Arise (including but not limited to claims for wages or other remuneration due; claims for breach of any contract or covenant, express or implied; personal injury, defamation or other tort claims; claims for discrimination, including but not limited to discrimination based on race, sex, religion, national origin, age, marital status, sexual orientation, handicap, physical or mental disability or medical condition; claims for benefits; and claims for violation of any federal, state, local or other governmental constitution, law, statute, ordinance, regulation, public policy or provision of common law) by final and binding arbitration pursuant to the then-current rules established by the American Arbitration Association (the "AAA"). The AAA's rules are available for review at www.adr.org. The nature of the claims asserted shall determine which body of AAA rules will apply. In the event that there is a dispute regarding which AAA rules apply, the AAA shall decide that issue; provided, however, that consistent with Section 10 in no event shall the AAA's Supplementary Rules for Class Arbitration (or any analogue thereto) apply. Company and Individual agree that the arbitration shall be conducted by a single arbitrator in the AAA office nearest Individual (or such other location as is mutually agreed to by the parties), and therefore waive any objections or claims they might otherwise be able to rightfully assert based upon the inconvenience of the forum or improper jurisdiction. Unless otherwise mutually agreed, the arbitrator shall be a practicing attorney with at least 15 years of experience as an attorney and at least five years of experience as an arbitrator. In the event of a conflict between the terms of this agreement and the applicable arbitration rules, the terms of this agreement shall control.

8. All parties to this agreement expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this agreement and judgment upon the award rendered by the arbitrator may be entered by any court of competent jurisdiction. Questions of arbitrability (that is whether

an issue is subject to arbitration under this agreement) shall be decided by the arbitrator. Procedural questions arising out of the dispute and bearing on its final

<u>(2) Arbitration provision contained in one of the Acknowledgment and Waiver Agreements (Doc. 14-1 at 86)</u>:

6. Client Support Professional acknowledges and understands that Company and Arise have entered into an agreement which provides for the resolution of any and all disputes or claims each may have against the other by binding arbitration, and that Arises's obligation to arbitrate disputes and claims under that agreement extends to disputes and claims that Arise may have against Client Support Professional. In consideration of Arise's agreement to arbitrate disputes and claims it may have against Client Support Professional and for other good and valuable consideration, Client Support Professional agrees to arbitrate any and all disputes or claims that he or she may have against Arise or any client of Arise as set forth below in Paragraphs 7 through 9.

7. Company and Client Support Professional hereby agree to resolve any and all disputes or claims each may have against the other, and Client Support Professional hereby agrees to resolve any and all disputes that he or she may have against Arise or any client of Arise (including but not limited to claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; personal injury, defamation or other tort claims; claims for discrimination, including but not limited to discrimination based on race, sex, religion, national origin, age, marital status, sexual orientation, handicap, physical or mental disability or medical condition; claims for benefits; and claims for violation of any federal, state or other governmental constitution, law, statute, ordinance, regulation, public policy or provision of common law) by binding arbitration pursuant to either the then-current Commercial Arbitration Rules and Mediation Procedures or the then-current Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association (the "AAA"). The arbitration shall be conducted by a single arbitrator in the AAA office nearest the claimant (or such other location as is mutually agreed to by the parties), and each party therefore waives any objections or claims they might otherwise be able to rightfully assert based upon the inconvenience of the forum or improper jurisdiction. Unless otherwise mutually agreed, the arbitrator shall be a practicing attorney with at least 15 years of experience and at least five years of experience as an arbitrator. The nature of the claims asserted shall determine which body of rules will apply. In the event that there is a dispute regarding which rules apply, the AAA shall decide that issue. Both sets of rules are available for review at www.adr.org.

8. All parties to this Agreement expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement and judgment upon the award rendered by the arbitrator may be entered by any court of competent jurisdiction. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the

arbitrator. Procedural questions arising out of the dispute and bearing on its final disposition are matters for the arbitrator to decide. Claims must be filed within the time set by the applicable statute(s) of limitations.